## ABRAHAM A. QUACKENBUSH v. ABRAHAM VAN RIPER.

A defence which might be made at law, and which a party will omit or decline to make, cannot be the basis of a suit in equity; unless it be in case of fraud, accident or trust, peculiarly within the province of a court of equity, or when the jurisdiction of the legal tribunal cannot admit the defence.

When the facts are such as constitute no defence at law, though properly produced; if they are matters of which a court of law can take no cognizance, and such as are peculiarly within the province of a court of equity; there can be no objection to the bill on the ground that it was not filed pending the suit at law, and an injunction cannot be dissolved on that ground.

If a defendant in his answer *charge* certain facts to exist, on which he intends to rely for his defence, and swears to the answer in the ordinary form, he swears to the *truth* of the facts, and not to the *fact* of the charge; and if the facts as charged are not true, perjury may be assigned upon it.

It is not sufficient for the defendant in his answer to say he does not know it, or does not believe it; as that may all be true, and yet the fact charged be uncontradicted.

What is necessary, and sufficient, in an answer.

When a charge is not fully answered, yet if the complainant do not show himself entitled to claim the equity growing out of that transaction, it will not stand in the way of dissolving an injunction.

When the answer is sufficient, and the complainant's equity denied, the injunction will be dissolved.

<br>

THE injunction in this case was allowed on the following state of facts, as set forth in the bill.

On the 25th March, 1825, the complainant purchased of the executors of Garret Lydecker, deceased, a farm in Bergen, containing eighty-seven acres and eighty-four hundredths of an acre, for the sum of three thousand seven hundred and fifty dol-

lars, and received a conveyance therefor. Running through these premises is a natural stream of water, across which there was at the time, and had been for ten or eleven years previous, a dam, for the use of a turning-mill. After the purchase complainant built a dam and cotton manufactory. In the life-time of Lydecker, from whose executors the complainant purchased, one Abraham Forshee owned the lands now in possession of defendant, and adjoining the lands of the complainant. The stream of water before spoken of runs first through the lands of the defendant, and then through the lands of the complainant. About the year 1812, when the premises now owned by the complainant and defendant were owned by Forshee and Lydecker severally, they agreed to sell to one Jesse Chapel a mill site on this stream for a turning-mill. The dam was to be near the division line where it crossed the brook. Each was to make a deed to Chapel for one hundred feet square of land, with the right of flowing back the water, for which each was to receive the sum of five pounds. Chapel paid the consideration money and took possession, and had the deeds prepared at his own expense; but they were not executed on account of some dispute between Lydecker and Forshee about the line of division, and it was deferred to a future day. Chapel remained in possession, erected a dam, and flowed back the water up to what is called the Great Falls, or nearly so, and erected a turning-mill, and occupied it for several years. After this Lydecker came into the possession of it, and claimed to hold it under Chapel, and after Lydecker's death it was held by his children or some of them. The complainant purchased of the executors of Lydecker, having understood from Forshee that he had sold to Chapel and received his money, as aforesaid, and that Chapel had the privilege of flowing back the water as far as his interest might require; and he purchased under the belief that by such purchase he acquired all Chapel's right.

On the 1st day of May, 1818, and before the complainant purchased, Forshee sold to the defendant the property adjoining. The conveyance, though absolute on the face of it, was nevertheless only in the nature of a mortgage. The complainant knew of this conveyance before he purchased of Lydecker's ex-

ecutors; but he understood from Forshee that the part sold to Chapel had been excepted: and supposing that to be the case, and knowing that the defendant was apprised of all the circumstances, he went on to erect a dam and cotton mill; and it was not until he had progressed in the work, that he discovered, on searching the records, that there was no such reservation in the deed.

The bill then charges that the defendant, before he obtained his title from Forshee, had notice that Forshee had sold to Chapel, and that Forshee, when he agreed to make the conveyance, told him that the rights and privileges of Chapel ought to be excepted in the deed: that Forshee was an unlettered man, and never in truth intended to convey them to the defendant: and further, that after he obtained his deed, he the defendant told the complainant that Forshee informed him of the sale to Chapel: that Chapel, or some person under him, was in possession when the defendant purchased in 1818, and continued so without any claim or pretence of right on the part of the defendant.

After the complainant had made some progress in the erection of his dam, he was apprised by the defendant that he the defendant intended to dispute the right of flowing back water on his land; whereupon the complainant, ascertaining that there was no reservation in the deed from Forshee to the defendant, thought it advisable to negociate, and had several friendly conversations with the defendant, and under the assurance that the difficulties between them should be amicably settled, he progressed in the erection of his dam and mill: that while they were in progress in 1827, the defendant proposed to him that if he would give him counsel and advice in locating and constructing a dam and race for a mill or manufactory that the defendant contemplated erecting on the said stream, that all matters in difference as it regarded flowing back the water should be settled. This was done; he gave the advice and instruction which was beneficial to the defendant, and he acted in accordance with it; and the complainant, supposing all things finally adjusted, went on and completed his dam and mill.

Soon after this, the defendant commenced an action against the complainant in the supreme court, which was tried in the

county of Bergen, and a verdict was obtained against the complainant for one hundred and forty-five dollars damages, on which a judgment has been entered and execution issued, which is now in the hands of the sheriff of Bergen; since which the defendant has again commenced another suit against him in the said supreme court.

The bill then charges, that the defendant is not a tenant in fee of the premises: that the deed under which he holds was intended only as a mortgage and security for money loaned; and that Forshee remained in possession after the deed was given, and the defendant received from him payments on account of interest. That afterwards the defendant pretended that the deed was an absolute one, and that Forshee had no right of redemption; and exacting of Forshee more money by way of rent than the interest of the money, Forshee abandoned the premises. That the complainant has since purchased of Forshee and wife their equity of redemption.

Under these circumstances the complainant insisted, that the defendant, being but a mortgagee, should come to an account, and on receiving the balance due convey the premises to him; or that he ought to convey the mill seat to him, and carry into effect the agreement with Chapel; and that in the mean time he ought to be restrained from prosecuting any other or farther suit against the complainant.

The injunction restrained the defendant not only from prosecuting the suit then pending, but also from collecting the amount recovered in the first suit.

The answer admits the sale from the executors of Lydecker to the complainant, and that for about ten or eleven years before this purchase there had been a dam across the stream, which had been used for a turning-mill; but denies that the said dam was on the lot of land and premises purchased by the complainant; on the contrary, he says it was on the land the defendant purchased of Forshee. He denies that when the complainant purchased the turning-mill was standing, and insists that the water power intended to be purchased by the complainant was that which was on the lot below the turning-mill dam; and that at the time of the purchase the complainant had no expectation

of availing himself of the water power created by the turning-mill dam, or of flowing the water above the said dam. He admits that about 1812, when Lydecker and Forshee owned the lands now owned by the complainant and defendant, they agreed to sell to Jesse Chapel a site for a dam and turning-mill. The dam was to be on the division line : that deeds were to be made, and five pounds to be paid by Chapel to each : that Chapel took possession and built his mill and dam, but denies that the water was flowed up to the Great Falls, or nearly there. He denies that the said Jesse Chapel was in possession of the dam, or that the turning-mill, as such, was standing when the complainant purchased ; and states that he (Chapel) abandoned the premises, and the works of the turning-mill were removed some years before. He denies that Lydecker in his life-time, or any of his children after his death, were in possession of the turning-mill or dam, or that they claimed the right to flow back water on the lands of the defendant. He says that when he, this defendant, purchased of Forshee, Chapel was yet living near the premises, and did not claim any right or interest in the said dam or lots of land. He admits that he gave notice to the complainant not to flow back the water further than the defendant's line, and states that the complainant disclaimed any right to flow back further than the dam, which was agreed to be the line. He admits the conveyance from Forshee to him in 1818, and that it was absolute in form, and denies that there was any understanding or intention whereby it was to have the operation of a mortgage only ; but that the sale and conveyance were in truth absolute and unconditional, and were so intended to be. He denies any notice of the right or claim of Chapel, save that he had heard some bargain had been made upon the subject, and enquired of Forshee about it, who told him there had been a verbal bargain on the subject, but that Chapel had not paid the money and no deeds had been executed, and that Chapel had no interest whatever in the premises. He denies that Forshee was an unlettered man, or that he intended to make any reservation. He denies that he ever told the complainant, before he built his dam, that Forshee at the time he conveyed to this defendant, informed him that he (Forshee) had sold or agreed to sell to Chapel such lot

and water privilege as aforesaid, and that he had received his pay for it. He denies that he ever conversed at all with complainant on the subject of Chapel's purchase till long after he commenced his first suit against complainant, since which, in conversing with the complainant, he has always insisted, as he knows the fact to be, that at the time of the said purchase, Jesse Chapel not only had no claim to the said property or any part thereof, but did not pretend to make any claim thereto.

The defendant admits that at the time he purchased of Abraham Forshee, Chapel was in possession of the turning-mill and dam, and flowed the water back for some distance upon the land of this defendant; but he claimed no right or title to the same, and applied to this defendant to purchase it; and not being able to purchase it, he gave up the possession to the defendant and left the state, since which no person has ever used the turning-mill except a man by the name of Waite, who used it for a short time under an agreement with this defendant and the said Lydecker, to pay a certain rent therefor—one half of which was to be retained by the said Lydecker, as the turning-mill was on his side of the line, and the other half was to be retained by this defendant, as he owned the dam and water power.

The defendant admits that when complainant was building his dam, he had frequent conversations with him upon the subject of the dam and water power, and offered to purchase the right to flow back the water upon the lands of this defendant, but that no agreement was made. He denies that he ever made any bargain, as is set forth in the bill, about the location of a dam and mill for this defendant, or about his counsel and advice therefor. He denies also that he employed him to locate his dam or factories. He also denies that he held or holds the property as a mortgagee in possession, and that Forshee had any right of redemption; but admits that he, Forshee, remained in possession for two years, paying rent to an amount not half equal to the legal interest of the purchase money, and then left the possession. And further admits that he would have been willing to take from Forshee or any other person what he gave for the property, but denies that he ever received any money by way of interest either from Forshee or any other person or persons.

Oct. 1831.

Quackenbush
v.
Van Riper.

On the coming in of the answer, it was moved to dissolve the injunction.

*E. Van Arsdale,* for complainant.

*Th. Frelinghuysen* and *Ph. Dickerson,* for defendant.

Cases cited :—*Eden I.* 79 ; 1 *Ves. jr.* 426 ; 1 *John. C. R.* 49, 444, 320, 91, 465 ; 2 *John. C. R.* 202, 228 ; 4 *John. C. R.* 510, 497 ; *Wyatt. C.* 11, 14, 234, 236 ; *Coop. E.* 313 ; 11 *Ves. jr.* 303 ; *Beam. C.* 179.

THE CHANCELLOR.  The first ground taken for dissolving the injunction is rather preliminary, having no connection with the main question, and applying to only a part of the case.   It relates to the judgment and execution in the first suit ; and is, that the application is too late ; that the party being conversant of all the facts before the trial, made no defence at law, nor any application for the aid of this court.   The proposition as laid down by the defendant's counsel, appears to me to be too broad, and would seem to lead to the conclusion, that in no case will a court of equity interfere after verdict and judgment, where a party was apprised of the facts on which his equity rested, and did not file his bill before judgment rendered.   The authorities cited do not go this length.   The case of *Lansing* v. *Eddy,* 1 *John. C. R.* 49, was a case of usury, were the defendant, after judgment and execution, sought for a discovery, and to obtain a return of the excess beyond the principal sum loaned and interest. An application for an injunction was refused, because the defence of usury could have been made at law, and no reason was assigned why it was not.   In *Simpson* v. *Hart,* 1 *John. C. R.* 98, the injunction was dissolved on the ground that the same matter had been examined by a court having competent power and jurisdiction to pass upon it.   The case of *Drage* v. *Strong,* 2 *John. C. R.* 230, was on a motion to dissolve the injunction upon the coming in of the answer.   It appeared that the party, having lost the opportunity of a new trial at law by his own default, came into this court to obtain a new trial, and the injunc-

tion was dissolved. In *Williams* v. *Lee*, 3 *Atk.* 223, lord Hardwicke held, that the court would not always relieve against a verdict where the defendant submits to try it at law first, when he might by a bill of discovery have come at the facts by the plaintiff's answer under oath, before any trial at law was had. It is evident that these cases all go on the principle of laches in the party who seeks redress, because he has not brought his facts properly before the court by witnesses, or has not procured through the oath of his adversary, by a bill of discovery, matters that might have availed him on the trial at law; and they go upon the further principle, that if the facts had been made to appear they would have constituted a defence at law. But if the facts are such as constitute no defence at law, though properly produced; if they are matters of which a court of law can take no cognizance, then, I apprehend, there can be no objection to the bill on the ground that it was not filed pending the suit.

The complainant's equity in this case rests on matters of trust, such as are not cognizable in courts of law, and can avail no-thing there against a legal title. A simple bill of discovery in such case would have been useless and nugatory, and if all the facts had been plainly proved it could not have varied the result in point of law. In *Bateman* v. *Miller*, 1 *Sch. and Lef.* 201, Ld. Redesdale makes it a part of the rule that prevents this court from interfering with a matter which had been tried in another tribunal, that it *be one over which the court of law had full jurisdiction.*

The true rule is given by Spencer, J., in *McVicker* v. *Wol-cott*, 4 *John. R.* 533:—" It is an undeniable proposition that a defence which might be made at law, and which a party will either omit or decline to make, cannot be the basis of a suit in equity, unless it be in cases of fraud, accident or trust peculiarly within the province of a court of equity, or where the jurisdiction of the legal tribunal cannot admit the defence." Inasmuch, then, as the matters which are the foundation of the complainant's suit are such as were peculiarly within the province of a court of equity, the injunction cannot be dissolved on that ground.

It is sought, however, to dissolve the injunction, because the equity of the complainant's bill has been fully answered. The

fulness of the answer is disputed in several particulars; and it is contended, in the first place, that the defendant has not denied the payment of the five pounds by Chapel to Lydecker and Forshee; that by this payment Chapel became the beneficial owner, and the complainant has succeeded to his right, and therefore the charge is material. There certainly is not a full denial of this part of the bill. It is not sufficient for the defendant to say, he does not know it or does not believe it. That may all be true, and yet the fact charged remain uncontradicted. If, therefore, Chapel was setting up this matter against the claim of the defendant, I should have no hesitation in saying that the equity of the bill in this behalf was not answered. But it is set up by a third person, and I do not see that he has any equitable right to avail himself of it. He does not set out in his bill any contract, either legal or equitable, whereby he claims right to succeed to the equities of Chapel. He shows no title or conveyance, no privity either of estate or contract between himself and Chapel, or between Chapel and Lydecker, under whom he claims immediately. On this subject the bill charges, that the said Garret A. Lydecker, for some time previous to his death, was in the possession, use and enjoyment of the said turning-mill and dam, so erected by the said Jesse Chapel, and held or claimed to hold the same under the said Jesse Chapel, and so held the same during his life, and after his death the same was held, used and enjoyed by his children or some of them, without any interruption or objection by or from the said Abraham Forshee or the said Abraham Van Riper, till the complainant purchased the said premises.

The allegation that *he held or claimed to hold* under him, is exceedingly vague and unsatisfactory, and seems almost to imply a doubt in the mind of the complainant himself as to his rights. It certainly is not sufficient to entitle him to claim the right that Chapel obtained by his purchases and possession. If there is any thing in it, it must be in the possession which he alleges that Lydecker and his children always enjoyed of this property up to the time they sold it to the complainant. But this charge of possession is distinctly denied in the answer; not only so, but it is expressly asserted that Chapel gave up the possession to the defendant, and that after that no person possessed it except for a

short time, when one Waite used it, paying or agreeing to pay rent to Lydecker and the defendant equally. I think, therefore, that although the charge of the payment of the five pounds is not fully answered, yet, as the complainant has not shown himself entitled to claim the equity growing out of that transaction, it will not stand in the way of dissolving the injunction.

In the second place, it is insisted that the defendant has not fully answered the charge respecting the agreement between himself and the complainant, as set forth in the bill, viz : that if the complainant would give his aid and direction in locating certain factories, he, the defendant, was about erecting, that the defendant would make no further difficulty about flowing back the water, and that all matters should be settled. The defendant, in his answer, denies that he ever made any such bargain as is set forth in the complainant's said bill, respecting the employment of the said complainant to advise in the location of his said cotton mill and dam, and then goes on to state what the facts actually were. The charge is simple, containing one distinct fact. The answer is equally simple, and denies the fact charged. It might have been more precise ; it might have stated there wás no such agreement as that stated in the bill, nor any other of the like nature and effect. But it is not so indefinite as was supposed on the argument. It was insisted there, that it amounted to nothing more than a denial that he made a bargain to *the like* effect, and did not amount to a denial that he made the bargain charged. I think otherwise ; and although, as before stated, the answer might have been more full and technical, I deem it to be sufficient in substance. It is direct, and without evasion. There were no specific charges, requiring a specific answer, and therefore the general answer was sufficient. *Cowp. Plead.* 313.

Again, under this head it is further insisted, that the answer is insufficient, because after denying that there was any such agreement as charged by complainant, it charges what the facts were. The mode is as follows : " On the contrary, he expressly charges the facts to be, that the said stream," &c. It was contended that this was not swearing to the matters charged, but only to the fact of the charge ; or in other words, that the party

by that mode of answer, does not swear that the facts are so, but only that he charges them to be so. I do not see it in that light. If a man in his answer charge certain facts or matters to exist, on which he intends to rely for his defence, and swears to the answer in the ordinary form, he swears to the truth of the facts, and not to the fact of the charge; and if the facts as stated or charged are material, and not true, perjury may be assigned upon it.

In the third place, it is insisted, that the charge in the bill, that the defendant is but a mortgagee in possession, and the facts connected therewith, are not fully denied by the answer.

The bill and answer are both very diffuse on this part of the case. The bill first charges that the defendant is not a tenant in fee, but only, in equity, a mortgagee in possession, and that it was fully understood that the deed should be considered as a mortgage. To this the defendant answers, and denies that he is a mortgagee in possession of the said premises, as set forth by the complainant in his said bill. He then undertakes to detail the facts relating to the purchase. In this statement he says, that Forshee proposed to him and Henry A. Hopper to take a deed and pay off the incumbrances, and advance him some money, and to give him some two or three years to refund the same: that this defendant then informed him that he never bought property in that way, and would make no such bargain with him. He states further, that at the time the conveyance was made, there was no right of redemption reserved, but on the contrary that he refused to give any such right. This I consider to be a sufficient denial of the charge. It is then further charged, with more particularity, that Forshee applied to the defendant to assist him, he being then embarrassed, and proposed to give a mortgage to secure him, which the defendant refused to do unless Forshee would assume the payment of certain moneys due him from Forshee's son, John Forshee, on a bond and mortgage, and would let that be put in the mortgage to be given by Forshee to the defendant; and that thereupon Forshee agreed to do so. This, as we have seen, has been already in part answered. As to that part of the charge relating

to John Forshee's bond and mortgage, the defendant answers explicitly, and denies that that debt formed any part of the consideration of the purchase; and he denies that any thing was then said, to his knowledge, about the debt of John Forshee.

The bill further charges, that Forshee and wife at first objected to giving an absolute deed, but being threatened with suit by the defendant, he finally, though reluctantly, agreed to execute the deed, but upon the terms and conditions before mentioned. To this the defendant answers, and denies that he ever threatened to prosecute the said Forshee, or used any other means to induce him to sell the farm. It is then charged, that for two years and upwards Forshee continued to use and enjoy the property as his own, and received money from John A. Boyd, esq., or some other person, towards paying the debt and interest due him. To this defendant says, that Forshee occupied the farm, but agreed to pay rent: how much he was to pay the first year he does not recollect: that at the expiration of the first year he made a specific agreement with defendant for another year, and agreed to pay for the whole time two hundred and sixty-two dollars and fifty cents, and to do certain repairs, and deliver possession on the first of April, 1820; and that he then voluntarily delivered them up: and he expressly denies that he ever received from John A. Boyd, or any other person or persons, any money which he retained on account of interest due from the said Forshee, or which he ought to have credited thereon.

Upon looking very carefully into the bill and answer, I am of opinion that the answer, as to these matters, is sufficient, and that the complainant's equity is denied. The answer might have been differently shaped, but it is not always easy to frame one so as to be above the reach of critical exception. By adhering too closely to the letter of the bill, an answer is oftentimes obnoxious to merited reproach. By taking what may be considered the spirit or substance of the bill, the precise point is sometimes evaded. In the one before me, I have not discovered any attempt at concealment or evasion; and as to the principal matters on which the complainant's equity must rest, I consider it sufficiently full.

Lastly, the complainant's charge that Forshee released to him

Oct. 1831.

Quackenbush
v.
Van Riper.

his equity of redemption; and it is objected that the defendant has not denied it. This is not denied; on the contrary it is admitted; but it cannot influence the decision of this question. As the case now stands it is totally immaterial, and no equity can grow out of it.

Let the injunction be dissolved.